David M. Lilienstein, SBN 218923
david@dllawgroup.com
Katie J. Spielman, SBN 252209
katie@dllawgroup.com
**DL LAW GROUP**
345 Franklin St.
San Francisco, CA 94102
Telephone: (415) 678-5050
Facsimile: (415) 358-8484

Attorneys for Plaintiff,
AMY F.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMY F.<br><br>Plaintiffs,<br><br>v.<br><br>CALIFORNIA PHYSICIANS' SERVICE dba BLUE SHIELD OF CALIFORNIA; TRINET GROUP, INC.; and DOES 1 through 10,<br><br>Defendants. | Case No.<br><br>**PLAINTIFF AMY F.'S COMPLAINT FOR BREACH OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974 (ERISA); BREACH OF FIDUCIARY DUTY; ENFORCEMENT AND CLARIFICATION OF RIGHTS; PREJUDGMENT AND POSTJUDGMENT INTEREST; AND ATTORNEYS' FEES AND COSTS** |

Plaintiff, Amy F. herein sets forth the allegations of this Complaint against Defendants CALIFORNIA PHYSICIANS' SERVICE dba BLUE SHIELD OF CALIFORNIA ("Blue Shield"); TRINET GROUP, INC. ("TriNet"); and DOES 1 through 10.

**PRELIMINARY ALLEGATIONS**

**JURISDICTION**

1. Plaintiff brings this action for relief pursuant to Section 502(a)(1)(B), (a)(2) and (a)(3) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. Section 1132(a)(1)(B), (a)(2) and (a)(3).  This Court has subject matter jurisdiction over Plaintiff's claim pursuant to ERISA Section 502 (e), (f) and (g), 29 U.S.C. Section 1132 (e), (f), and (g)

and 28 U.S.C. Section 1331 as it involves a claim made by Plaintiff for employee benefits under an employee benefit plan regulated and governed under ERISA. Jurisdiction is predicated under these code sections as well as 28 U.S.C. Section 1331 as this action involves a federal question.

2. This action is brought for the purpose of recovering benefits under the terms of an employee benefit plan, and enforcing Plaintiff's rights under the terms of an employee benefit plan named as a Defendant.

3. Plaintiff seeks relief, including but not limited to: past mental health benefits in the correct amount related to Defendants' improper denial of Plaintiff's claim; prejudgment and post judgment interest; general and special damages; and attorneys' fees and costs.

**PARTIES**

4. Plaintiff is, and at all times relevant was, a resident of California.

5. At all relevant times, TriNet employed Amy F.

6. At all relevant times, Any F. participated in three employee welfare benefit plans, TriNet HR III, Inc. HMO 30 Plan, ("the Plans") within the meaning of ERISA section 3(1), 29 U.S.C. § 1002(1), sponsored by Defendant TriNet.

7. Mental Health claims under the Plan were at all relevant times administered by Blue Shield and/or a third-party Mental Health Service Administrator ("MHSA").

8. TriNet was a Plan Administrator.

9. E.F. is Amy F.'s child and a Plan beneficiary. E.F., is a non-binary adolescent, further referred to herein as the pronoun, "they."

10. At all relevant times, the Plan was an insurance plan that offered, *inter alia*, mental health benefits to employees and their beneficiaries, including Plaintiffs. This action involves mental health claims denied by the Plan's mental health claim administrator.

**FACTS**

**COMPLAINT**      **CASE NO.**

11. The Plan guarantees, warrants, and promises coverage for medically necessary health care services, care and treatment, including but not limited to: health care services, mental health care, and the treatment at issue herein.

12. At all relevant times E.F. was a beneficiary of the Plan, and the Plan was in full force and effect.

13. Medical Necessity or Medically Necessary treatment is defined in the Blue Shield Evidence of Coverage as "[s]ervices . . . which have been established as safe and effective, are furnished under generally accepted professional standards to treat illness, injury or medical condition, and which, as determined by Blue Shield, are:

   a. Consistent with Blue Shield of California medical policy;

   b. Consistent with the symptoms and diagnosis;

   c. Not furnished primarily for the convenience of the patient, the attending Physician or other provider; and

   d. Furnished at the most appropriate level which can be provided safely and effectively to the patient."

14. The Plan contemplates treatment for participants and beneficiaries in a residential treatment center.

15. Residential Care is defined in the Blue Shield Evidence of Coverage as "Mental Health or Substance Abuse Services provided in a facility or a free-standing residential treatment center that provides overnight/extended-stay services for Members who do not require acute inpatient care."

16. At a young age, E.F. began displaying severe behavioral problems at home and at school. They became physically abusive. They struggled with emotional-behavioral difficulties, sensorimotor problems, and intense bouts of anger and rage.

17. At age 10, E.F. underwent psychological testing and was diagnosed with, *inter alia,* attention deficit hyperactivity disorder and mood disorder, not otherwise specified. Additionally, it was recommended that E.F. begin therapy and a participate in a 504 educational plan.

18. E.F. entered psychoactive therapy and was prescribed medication.

19. E.F. continued psychotherapy throughout their teenage years. Unfortunately, the therapy provided little relief.

20. By the age of 14, E.F. was diagnosed with and suffered from, *inter alia,* generalized anxiety, depressive disorder, attention deficit hyperactivity disorder (ADHD), Tourette disorder, suicidal ideations, and multiple suicide attempts.

21. That same year, E.F. placed a knife at their chest, threatening suicide. They had daily fits of rage. They physically assaulted people. They withdrew from school and refused to partake in activities of daily living.

22. At the age of 15, E.F. underwent a further neuropsychological evaluation. The psychologist recommended that E.F. participate in dialectic behavior therapy, individual psychotherapy, and be evaluated for alternative medication management.

23. At the recommendation of her treating mental health provider, E.F. participated in a parent/child dialectical behavioral therapy class. They were discharged before program completion. The psychologist determined that E.F. required a higher level of care at a residential treatment center.

24. Despite ongoing mental health treatment, E.F. continued to regularly engage in self-harm behavior. They expressed continued thoughts and desires to commit suicide. They refused to eat, ultimately putting themselves in danger.

**COMPLAINT**     **CASE NO.**

25. Shortly thereafter, E.F. was hospitalized at Alta Bates Medical Center's inpatient center for one week due to continued suicide attempts. While at the inpatient level of care, E.F.'s treating providers recommended residential treatment center placement.

26. By this time, due to the uncontrollable fits of rage and threats of violence, Amy F. moved E.F.'s sibling to a family member's home to ensure their safety.

27. Because of their conditions, treatment history, and based upon the recommendations of their health care providers and therapists, E.F. was referred and admitted to True North Wilderness Program ("True North"), a licensed outdoor behavioral health program, to treat and manage their multiple mental health conditions.

28. Upon completion of their treatment at True North, and at the recommendation of their treating providers, E.F. was referred to, and admitted at, La Europa Academy ("La Europa") residential treatment center.

29. At all times relevant, E.F.'s treatment at La Europa was medically necessary, based upon the reasoned medical opinions of E.F.'s mental health providers.

30. Plaintiff filed claims for mental health benefits with Defendants for E.F.'s treatment at La Europa.

31. The Plan, by and through Blue Shield and/or Blue Shield's contracted MHSA, denied Plaintiff's claims.

32. Plaintiff timely appealed these denials.

33. Blue Shield and/or its MHSA, on behalf of the Plan, denied Plaintiff's appeal.

34. In denying Plaintiff's claim for care and treatment for E.F., Blue Shield and/ or its MHSA used "level of care guidelines" that are unfair and biased against approving claims for residential treatment such as are at issue herein, and that do not reflect reasonable standards in the medical community.

35. As a result, Plaintiff was forced to pay for E.F.'s care and treatment at La Europa from her own personal funds.

36. Plaintiff has exhausted all administrative remedies regarding the denial of E.F.'s mental health benefits.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION

**Recovery of Benefits Due Under an ERISA Benefit Plan**

**(Against California Physicians' Service dba Blue Shield of California, TriNet Group, Inc., and TriNet HR III, Inc. HMO 30 Plan, For Plan Benefits, Enforcement and Clarification of Rights, Prejudgment and Post Judgment Interest, and Attorneys' Fees and Costs, Pursuant to ERISA Section 502(a)(1)(B), 29 U.S.C. Section 1132(a)(1)(B))**

37. Plaintiff incorporates all preceding paragraphs of this Complaint as though fully set forth herein.

38. ERISA Section 502(a)(1)(B), 29 U.S.C. Section 1132(a)(1)(B) permits a plan participant to bring a civil action to recover benefits due under the terms of the plan and to enforce Plaintiff's rights under the terms of a plan.

39. At all relevant times, Plaintiff, and her then minor child, E.F., were insured under the health care plan at issue herein. At all relevant times, E.F. met the medical necessity criteria for treatment required under the terms and conditions of the Plan.

40. By denying Plaintiff's mental health claim, Defendants have violated, and continue to violate, the terms of the Plan, the terms of ERISA, and Plaintiff's rights thereunder.

41. The provisions of an ERISA plan should be construed so as to render none nugatory and to avoid illusory promises.

### SECOND CAUSE OF ACTION

**(Against Defendant BLUE SHIELD for Breach of Fiduciary Duty)**

42. Plaintiff incorporates all preceding paragraphs of this Complaint as though fully set forth herein.

43. 29 U.S.C. § 1132(a)(3) states that a civil action may be brought by a "participant, beneficiary, or fiduciary to (A) enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provision of this subchapter or the terms of the plan."

44. At all times relevant, Blue Shield owed fiduciary duties to Plan participants and beneficiaries, including Plaintiff.  Under 29 U.S.C. § 1104(a), Blue Shield is required to discharge its duties with care, skill, prudence, and diligence under the circumstances that a prudent person acting in a like capacity and familiar with such matters would use under 29 U.S.C. § 1104(a).  Under ERISA, Blue Shield is required to act in the best interests of Plan participants.

45. As a fiduciary, Blue Shield owed and owes Plaintiffs a fiduciary duty to discharge its duties in accordance with the documents and instruments governing the Plan.

46. Plaintiff is entitled to injunctive and/or mandamus relief under 29 U.S.C. § 1132(a)(2)-(3).  She is entitled to enjoin any act or practice by Blue Shield that violates ERISA or the Plan, and/or is entitled to seek other appropriate equitable relief that is traditionally available in equity.

47. Blue Shield breached its fiduciary duties to Plaintiff by, among other things, refusing to approve coverage for medically necessary mental health treatment.

48. In denying the claims for residential treatment care at issue herein, Blue Shield did not employ the definition of "medical necessity" that is set forth in the Plan.  Rather, Blue Shield employed what it calls level of care guidelines.

49. In the past Blue Shield's level of care guidelines have been referred to as the Magellan Guidelines.  In about 2017 Blue Shield ceased using the then-current Magellan Guidelines.  Plaintiff alleges that Blue Shield ceased using the Magellan Guidelines because, at

least as to evaluations of claims involving residential treatment facilities, Blue Shield was aware these level of care guidelines did not reflect reasonable standards in the medical community. To this date Blue Shield has misrepresented why it stopped using the Magellan Guidelines.

50. Blue Shield replaced the Magellan Guidelines the guidelines it used as a basis for denying Plaintiff's claims at issue herein.

51. Blue Shield employed guidelines referred to as the BSC/Magellan Medical Policy MCG 20th Edition guidelines to deny Plaintiff's claim.

52. It is currently unknown how or why Blue Shield acquired these newer level of care guidelines.

53. Plaintiff alleges that Blue Shield's current level of care guidelines, as specifically concerns claims at the residential treatment level of care, do not reflect reasonable standards in the medical community.

54. Blue Shield breached its fiduciary duties to Plaintiff by conducting a review that failed to consider its insured's specific medical needs, peer-reviewed scientific and medical evidence regarding the effectiveness of residential treatment for its insured's conditions, nationally recognized professional standards, expert opinion, generally accepted standards of medical practice, or its insured's specific need for residential treatment in light of previous failed attempts at outpatient treatment.

55. Plaintiff relied on Blue Shield's claims denial to its detriment.

56. As a consequence of Blue Shield's breaches of its fiduciary duties, Plaintiff has incurred legal fees and other costs associated with Blue Shield's claim denials and the resulting prosecution of this action.

57. Pursuant to 29 U.S.C. Section 1132(g), Plaintiff is entitled to recover her attorneys' fees and costs incurred herein.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff prays that the Court grant the following relief as to the FIRST CAUSE OF ACTION:

58. Declare that Defendants, and/or each of them, violated the terms of the Plan by failing to provide mental health benefits;

59. Order Defendants, and/or each of them, to pay the mental health benefits due, together with prejudgment interest on each and every such benefit payment through the date of judgment at the rate of 9% compounded;

60. Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA Section 502(g), 29 U.S.C. Section 1132(g);

61. Provide such other relief as the Court deems equitable and just.

**WHEREFORE,** Plaintiff prays that the Court grant the following relief as to the SECOND CAUSE OF ACTION:

62. That Blue Shield cease using its current level of care guidelines and instead replace them with level of care guidelines that are consistent with commonly accepted standards in the medical community

63. Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA Section 502(g), 29 U.S.C. Section 1132(g);

64. Provide such other relief as the Court deems equitable and just.

Dated: September 25, 2019                        Respectfully submitted,

**DL LAW GROUP**

By: /s/ David M. Lilienstein
David M. Lilienstein
Katie J. Spielman
Attorneys for Plaintiff, Amy F.